or will be in a minute, my partner, Charles Callen. We represent eight Mississippian legislators who have been served with civil process in this case. This case is a section 1983 case. Plaintiff's substantive problem with this case is that Congress in 1871 did not authorize local governments to sue states. They have spent almost six years trying to plead their way around that problem. Two of their complaints have been thrown out. We ask you to throw out the third today for lack of standing. Their procedural problem is that Congress in 1871 intended to preserve the historic legislative immunity from civil process. We ask you to preserve that immunity by quashing the subpoena today. The court should keep these congressional decisions clearly in mind as it considers all issues in this case, including appellate jurisdiction, because collateral order appeals are well established in section 1983 cases, particularly with law enforcement officers. Law enforcement officers were the targets of the Ku Klux Klan Act of 1871, but the Supreme Court has said that law enforcement officers have a sufficiently important interest in avoiding trial that they're entitled to immediate appeals. State legislators were not the targets of section 1983. They were protected by section 1983. If law enforcement officers have a sufficient interest to come to this court, certainly state legislators have a sufficient interest to come to this court. That's what this court ruled in Stallworth. The merits panel in Stallworth heard exactly the same arguments that you hear today. They properly rejected them based on this court's precedents and good sense. This court should do the same, whether you call it law of the case or rule of orderliness or no second bite at the apple. Your Honor, in case we don't agree with your main argument, do you have an evidentiary privilege argument to make on behalf of the legislators? Yes, Your Honor. I do intend to reach the privilege question, but jurisdiction is what you asked us to address, and I thought I probably ought to touch on it first. I do want to say a word about jurisdiction in the district court because that's where this court went last time, and you may or may not reach the privilege question unless you get past standing. There are two problems with plaintiff standing in this case. They have no certainly impending injury, and the injury they claim is not particular and personalized. Now, there are six plaintiffs in this case. I don't know how many of them are still on the board. Those who are still on the board haven't suffered any injury. Those who have left the board have already suffered those injuries, but Senate Bill 2162 had nothing to do with it. Injury is not certainly impending because nobody will be removed from the board just because the statute takes effect. Mississippi law says that airport commissioners stay in office until they're replaced. That's why they sued these defendants to keep them from appointing their replacements. Until that appointment happens, they have no injury, and they have no certainty that the injury will ever happen. I thought this was an entirely new board. These people are not being replaced, are they? Their board has been superseded and done away with. Well, Your Honor, their board... Isn't that an injury to them personally, and isn't it imminent? Apparently, they didn't think so, which is why they sued these defendants to enjoin these And in what case did they say that the adoption of the statute all by itself injures them? And, of course, it doesn't. They keep their jobs until they're replaced, and there is no certainty as to who will be replaced and who will not be replaced. There are five seats for Jacksonians on the board today. There will be five seats on the board for them when it comes into effect. We have no idea who will fill these seats. You represent legislators who are not party to this suit. Correct. Is that right? Yes, sir. We're not parties. As far as I can tell, your main complaint is that you have an evidentiary privilege that is being mistreated by them having to answer a privilege law requirement, which is a federal rule. And in federal court, you've got to show there's something wrong with the federal rule. Otherwise, you have to comply. You have to comply with it. We do raise privilege, Your Honor. We are entitled to raise lack of jurisdiction in the district court. That's how we won the Stallworth case. We raise it here again today and again. We would rely on the fact that there's nothing certainly impending. There is no allegation that their rights are being violated and under reins. They can't assert anybody else's rights. But let me get to privilege because I understand the court wanting to deal with it. The question on privilege deals with a prior decision of this court, the Jefferson Parish Health Centers case. And the question for this court today is what Jefferson said about legislative privilege and whether it is a holding in that case. I want to first say that I don't think that language is a holding. I think it came in the process of rejecting a whole slew of preliminary arguments that the parish was throwing up before you could get to the real issue. And the real issue in a preliminary injunction was whether the plaintiffs had stated a claim against the parish. And they argued about privilege because they wanted to get immunity. What they said is we must be immune from suit because we're privileged and you can't prove your claim without getting privileged evidence. And this court said no, that's a red herring. This court said even assuming that the council members' reasons for passing the resolutions are privileged, this evidentiary privilege cannot bar the adjudication of the claim. So the court said, as it did with their other preliminary arguments, we don't think much of your arguments, but they're saying even if you're right about the privilege, you're wrong about the adjudication of the claim and that's the only issue we have before us. I do want to address what the court said about the privilege because I don't think what it said goes far enough to reach the state legislators in this case. All the court said is that the privilege is qualified. Hard for me to think of a privilege that isn't qualified. Every privilege has limits. Every privilege has circumstances in which it doesn't apply. In this case, the legislative privilege doesn't apply to administrative or executive acts. Now, there was an issue in Jefferson Parish as to whether this was a legislative act at all. You'll remember what they did was cancel a lease. That doesn't sound like legislation. That sounds like administrative and executive action. So this court really didn't see the need to address whether there was a legislative act in the case or not. The other qualification we know of is that it doesn't apply in bribery cases because Gillick says that and it may not apply in any criminal case, although the language in Gillick to that effect is probably a little broader than it needed to be. So there are qualifications on it. The question is, did the court say anything in Jefferson that addresses the key issue in this case? And the key issue in this case is whether the privilege covers the subjective motives of state legislators. The Jefferson Parish case certainly didn't say anything about state legislators, and they never really got to the question of subjective motives. They just said there's a cause of action here, we're going to address the cause of action, and ultimately they said there wasn't a cause of action and we're going home. So there's not a holding on privilege and the subjective motives of state legislators. But every court of appeals that has addressed that question has said you have, you may not inquire into the subjective motives of state legislators where it's a legislative act in a civil case. Mr. Wallace, no, I'm sorry. Are you asking us to follow the privilege analysis that the Eleventh Circuit did in the Holland case? It was a somewhat procedurally different situation. In that case, the district court said you have to produce these documents because you didn't produce a privilege log. And it got up to the Eleventh Circuit and they said first we've got jurisdiction, and second, you didn't have to produce a privilege log because all you're looking for is motive. Whether or not we've got an order that says we have to produce, I think the magistrate judge said you do have to produce. I think the district judge backed away from that. But I don't think it matters because the point in Hubbard is if you're looking into motive, don't start down the road at all. My question was really going to the motive. That was a First Amendment case. It was. It was an equal protection case. But is motive essentially the only thing that we're interested in here with respect to the legislators? Did they have a motive to cancel the... That is the only point of relevance that the plaintiffs have ever asserted in this case. And throughout their brief, they say equal protection claims are so important that we have to be able to ask legislators what their motives were. That's been their argument. And the answer to that is the greatest implementation of the equal protection clause that was ever adopted by Congress was adopted in 1871. It's Section 1983. That Congress knew all about legislative privilege against civil process because they'd enjoyed it since 1789. They intended the Tenney case, the Supreme Court says they intended for that protection to be extended to state legislators no matter how important the issue is. And we think you follow the binding intent of Congress. Mr. Wallace, if you're right that the privilege applies to all evidence of intent, you know, motive, isn't the discovery request just on its face broader than... I know you were answering his question that everything goes to motive. But if you just read it, it seems to be broader than that. And so what do we do if we get into parsing this? What do we do with the parts that are not obviously about motive? As I sit here, Your Honor, I think we have narrowed it before the magistrate. I don't have the subpoena sitting up here at the lectern with me. But I don't think that anybody has ever asked the court to parse it, either at the magistrate level or here. So we don't have to get our red pen out and try to say this is motive, this is not. That's not what you anticipate. I don't think you're going to get there. And frankly, I don't think they're going to ask you to get there. They've said from the beginning of this case, what we want is motive. This case is important enough. We're entitled to motive. And that's where they've chosen to stand their ground. But you'd be just fine if we didn't address any of that and just ruled that under the law of the case, we have jurisdiction under collateral order and we should treat it just the exact same way as Stallworth. Well, appellate jurisdiction is the exact same way in Stallworth. We've changed from Stallworth. When we came down here the last time, I pointed out they hadn't alleged any injury. Right. Now they've tried it. It's not injury. That was amended on the right. But it dealt with the other standing issues that it hasn't happened yet. And I think you've got to deal with the other standing issues. You're violating reins by asserting the rights of the city government. And I think it's not certainly impending because you've sued five different people and you don't know what they're going to do. And you may never do it. Do you think that we would create a circuit split with Hubbard or not really because it's a little different? I don't. I don't think it's different. I do think it would be a circuit split, and we have so argued in our briefs. They say if it's motive, you don't start down the road, you stop. And that is what we're asking this court to do. There was standing in Hubbard, right? Or as I recall, the court must have found standing in that case because it proceeded to the merits of the legislative privilege. There wasn't any question about the point of standing to bring the lawsuit in Hubbard. That's an issue that has been raised in Stallworth and raised again here. But if you get to the legislative privilege merits and you don't quash, I think you will be creating a circuit conflict with Hubbard. We ask you not to do that. We ask you to give us the protection Congress intended. Thank you. Thank you, sir. Mr. Anderson? Good afternoon, Your Honors. May it please the Court. My name is Austin Anderson. I represent the individual commissioners, the appellees in this case. I'm going to start by discussing appellate jurisdiction because I believe that's where this court should start. There doesn't seem to be any dispute in this case that exercising appellate jurisdiction here would be an expansion of the collateral order doctrine. The Supreme Court in Mohawk has said that the courts should not expand that doctrine. It must remain narrow and selective. And further, Congress has determined that rulemaking rather than case-by-case determination is the appropriate way. It seems to me that your argument about appellate jurisdiction depends on the idea that, well, there's no order-produced documents here, so therefore the privilege issue really isn't opposed, so therefore no collateral order appeal because this really doesn't even address that. Now, just a couple of questions. I mean, in your brief in Stallworth, you said that the order of the district court requires production of documents. Now, this case seems to me to be just a redo of Stallworth because you've got the magistrate and the district court reinstating the same order, and yet now you say, well, there's no documents that have to be produced. So, Your Honor, there's a slight procedural difference in that the district court reinstated its order. It wasn't the magistrate who reinstated his order. So the magistrate observed that it was likely that communications that had been shared with third parties, any privilege was going to be waived and those documents would have to be produced. The magistrate didn't reach a determination on that because it didn't know which documents we were talking about. The district court did not require the production of any documents. It just asked for a privilege log so that it could assess the question for itself. And as Your Honor pointed out, the difference we're talking about here is the difference between an order to produce a privilege log and an order to produce documents. But that difference is directly relevant to all three of the factors that this court has to consider when determining. If I agreed with you on that point, would I be splitting from the Eleventh Circuit's decision? Because in that decision, what is it? I keep getting it wrong. Is it Hubbard? Hubbard, Your Honor. Hubbard. In Hubbard, I thought the Eleventh Circuit said the privilege is not just don't produce these particular documents, but it's don't, we don't want you to rope us into the discovery process by having to go produce a privilege log and then go back and forth in litigation on this issue. So two answers, Your Honor. First is that Hubbard is consistent with this circuit's decisions in Carr and Cates in exercising collateral order jurisdiction over an order to actually produce documents, not an order to produce a privilege log. Yeah, but I just, my question is, does Hubbard say the requirement to produce a privilege log is encompassed within the whole idea of the legislative privilege? Hubbard does not apply on that question in this case, Your Honor. Does Hubbard say that or not? I'm concerned about whether by ruling in your favor, I would create a split. This panel would create a split with the Eleventh Circuit. Understood, Your Honor. There is no danger of creating a split here because the Hubbard court explicitly noted that its decision was limited to the context of the First Amendment claim that was asserted in that case. And the court decided that the— My question is about the privilege log. I thought there's a passage in the Hubbard decision that says, and this kind of privilege, this legislative privilege, goes to the idea that the legislators are going to have to be involved in this litigation, producing privilege logs, going back and forth on what documents are privileged and what documents are not. The basis for the Hubbard court's statements was the fact that the First Amendment claim being asserted by the plaintiffs did not implicate legislative motive. The court decided that the claim that the plaintiffs were trying to make was not recognizable. So there's no reason to order— But that goes to the merits of the claim. I'm just asking about appellate jurisdiction. Again, Your Honor, that's why the Hubbard decision is distinguishable and would not say that you can exercise— Okay. Well, let me ask it this way. Here's a different angle on it. Stallworth implicitly found that there was appellate jurisdiction under the collateral order doctrine. It was briefed in the case. We have a precedent that says that constitutes implicitly finding appellate jurisdiction, not a drive-by jurisdictional ruling. So why doesn't law of the case then say we have appellate jurisdiction? So two answers, Your Honor. First, it's important to distinguish between law of the case rule and the rule of orderliness. And the legislators have, in their briefing, I believe, again today, tried to conflate the two. Law of the case—the rule of orderliness only applies when an issue is squarely addressed. There's no allegation that the 2019 order squarely addressed appellate jurisdiction because it doesn't discuss it at all. So law of the case may apply to an implicit decision. Frankly, it's not clear that the 2019 order did implicitly decide that issue because it didn't reach the merits of the dispute. Was it briefed in the case? It was raised in the briefs, but it was not discussed by the court. And the court did not reach the merits of the dispute. But even if we assume that the 2019 order implicitly decided the issue of appellate jurisdiction, the law of the case rule is discretionary. It is not a limit on this court's power. And this court has recognized that there are multiple circumstances applicable in this case where it is especially appropriate to reconsider a prior order under the law of the case rule. One of them is when there is an intervening decision that further develops the law in this area. What's that? The Banca Pueo decision from 2020, the Fifth Circuit decision, which makes clear that a preliminary discovery order of the kind that we have before us here, the order to produce a privileged log, is not appealable under the collateral order doctrine. And even apart from that development of the law, issues of appellate jurisdiction are especially appropriate for reconsideration under the law of the case doctrine. Isn't that really helpful, the Banco case? I mean, we already had Mohawk. I mean, so we were following our case branch line already. So how did — I don't think that Banco Pueo changed that, did it? So, Your Honor, the reason Banco Pueo is instructive here is because it recognizes the interest in the finality rule that would be jeopardized by entertaining a preliminary order on a discovery issue. The district court here has not had a chance to determine whether and how the privilege applies to the documents that the legislators are withholding. And so if this court exercises review now, before the district court has been able to rule on those questions, there's a serious risk that the court will be asked to issue an advisory opinion on a question that's not ultimately necessary to resolve the dispute. There may — Why isn't Cates controlling? Well, Your Honor, because — I mean, you did law of the case, and you said, well, we can use our discretion and not follow the Stallworth case because we think there's some good reason to. But why shouldn't Cates apply? So, Your Honor, Cates only applies to orders to actually produce documents, not orders to produce a privilege law. And the reason that — there are three reasons that distinction matters here. I think the easiest one to understand is the second prong in the Will v. Halleck test, which says that the interest to be served by allowing an immediate appeal must be sufficiently important to justify the use of the collateral order doctrine. Here, the interest the legislators have in appealing now versus waiting for the district court to see whether the district court actually orders the production of documents is avoiding the burden of producing a privilege law. But Will v. Halleck tells us that the collateral order doctrine cannot be used to avoid trouble — to save trouble for the government or its employees. So the Supreme Court has already said that's not a sufficient interest to trigger application of the doctrine. The legislators are also attempting to argue that the information disclosed in the log itself will irretrievably breach the privilege. On the substance, they have no support for that contention, which would create a privilege unlike any other here. But the court doesn't need to reach the merits of the question in order to determine that the interest they're seeking to protect is not sufficient to trigger collateral order review because the information contained in a privilege log is precisely the information that the court needs to make a determination in the first instance about whether and how the privilege applies. And this Court's precedent in Carr, in Overby, and in ACLU of Mississippi makes it very clear that it is the courts that need to make the determination in the first instance about whether the privilege applies. Well, so go ahead, Judge. Please. Well, you say that the court needs to make the decision whether the privilege applies, but that's not true if all the documents have to do with motive and motive is not going to be allowed to be shown that way. So do all the documents have to do with motive? So are we supposed to parse between the documents? So as Your Honor recommended— They're overrequested. Sorry. Yeah. The opposing counsel says, no, this is not a parsing case. Do you think it's a parsing case? Two answers, Your Honor. The first is that it is up to the court and not the legislators to decide whether the documents in their possession sufficiently implicate legislative motive or are sufficiently related to the legislative process to come within the ambit of the privilege. So it's up to you to tell us whether you sought documents on motive or did you seek documents on some other topic that's front and center here and that's relevant to this appeal. So, Your Honor, the subpoena seeks documents related to motive, but that does not necessarily mean that the privilege applies. Even the cases the legislators cite recognize that the privilege only applies to documents related to the legislative process or concerning legislative acts. So it's only motive, though? There's no other purpose that you've sought these documents? No, Your Honor. The purpose for which the documents are sought is legislative motive, which— Prove motive of the legislature. Prove motive in the equal protection claim. As we're—correct, Your Honor, as we are required to do— I can't imagine why else you would want the documents. You want to know about the motives of the legislature. If I were you, I would want to know that, too. We have to know that in order to succeed on our claim. I didn't say that, but I would want to know it. So, but the—I think the distinction here is important. The privilege does not apply to every document that a state legislator has ever touched. It applies to documents that are central to the legislative process. If the court can't see a privilege log, the court has to take the legislator's word for it that every document in their possession is sufficiently related to the legislative process to come within the ambit of the privilege. Entirely separately, the legislators just conceded that the privilege is qualified. It can yield in certain circumstances. He said it would yield in circumstances such as with respect to criminal allegations, which are not present here, or with respect to things like cancellation of a lease, which wasn't even a legislative act. So, Your Honor, the—what's important to bear in mind is the analysis of whether the privilege should yield. As this court—sorry, as recognized in the Perez case, which this court has cited favorably, depends not only on the purpose for which the plaintiffs seek the documents, but also the interest we serve by protecting those documents. And the court cannot tell—cannot make an assessment of how important that interest is  including who they've been shared with in the past or how closely they relate to the legislative process. I understand. Could I ask two questions? One has to do with mandamus. If you were right and the law of the case should be ignored, should we nevertheless use the vehicle of mandamus, which has been requested now in this case, and even if we said it was untimely, would probably be requested tomorrow back in the district, you know, in some other proceeding? So, as long as this still is ongoing for such a long time. So, that mandamus. And then the second question is, we skipped a little bit over the jurisdiction of the district court and whether or not they're standing on the merits, the idea that they haven't been removed. Can you go over both of those before your time expires, please? Yes, Your Honor. So, I believe we can do mandamus briefly. The legislators have not followed the procedures laid out in the rule governing mandamus, which requires that the respondents get a chance to file a brief addressing the issue before the court grants mandamus. So, if the court is willing to consider that issue, we would ask for a chance to brief it more fully. In our reply letter brief, I think we adequately point out why mandamus would not be appropriate in this situation. But moving to standing, the case for the commissioner standing in this case is fairly straightforward. They will lose their positions on the authority by operation of a state law. And because of that, they will suffer an injury that is actual or imminent under the Supreme Court's precedence in Susan B. Anthony List and Friends of the Earth, which says that the threat in future enforcement that has a realistic threat of harming the plaintiff is sufficient to go first standing. But they may never lose their position because no appointment may never be made, and they may decide to go their merry way or pursue some other interest for some other reason in the meantime. So, I believe there are two questions there. The first is that on the first, I don't agree with Mr. Wallace's characterization of how this law works. The law will abolish the existing authority and replace it with a new authority, answering to different appointing authorities. So you're saying even if your clients are on that group, even if they were to get it, it wouldn't be the same job? Well, yes, Your Honor. It's true that it would not be exactly the same job, but also that's not how the standing inquiry works. It looks at the injury that the plaintiffs are going to suffer, not whether they could mitigate or relieve that injury through some unrelated relief in the future. If McDonald's fires me on the basis of my religion, they can't show up in court and say, you don't have standing because Burger King down the street is hiring. Well, so interesting because that leads to my question, which is let's imagine one of these plaintiffs. This may be true, actually. Did one of the plaintiffs pass away? Ms. Pridgen? Yes, Ms. Pridgen. So is Ms. Pridgen's estate going to be able to continue this lawsuit for her seat? No, but the answer is because of the nature of the relief sought. We are not seeking damages because the injury has not occurred yet. We're talking about the threat and future enforcement of a law. So it's going to operate on whoever is in the seat at that time. That does not mean — Her estate couldn't pursue it because it's not an injury that is personal to her. So, and I believe this gets to your second question, Judge Allrott. It is also important to bear in mind the distinction between standing and mootness here. If one of the commissioners were to lose their position for an unrelated reason while this lawsuit is pending, their claim would likely become moot because they no longer stand to be injured by the law when it goes into effect. That does not mean they didn't have standing to bring the claim in the first place. No, I wasn't asking about mootness. I was asking about the nature of the injury. The plaintiffs here are not saying my position was eliminated because of my race. I believe that they are, Your Honor. I thought they were saying that because of the racial makeup of the city of Jackson, the commission or the board or the JMAA was eliminated and transferred to a different decision-making body, not because of their own race. Understood, Your Honor. And the legislators have made that argument, but that argument is based on an extremely selective reading of the complaint. Paragraph 140 of the complaint says that the commissioners will lose their positions because the law abolishes the authority on the basis of race. That means that they're arguing that because of their race, their own individual races, that's why the law was passed, not because of the race of the predominant race of Jackson, Mississippi? Yes, the allegation is that they are being deprived of the position on the basis of their race. That argument is not, or that allegation is not mutually exclusive with an allegation that the authority is also being abolished on the basis of the race of the citizens and officials of Jackson. Well, the specific injuries, so, for example, a per diem, the complaint was amended such to say that, well, look, I've got a per diem for this, right? Now, that is an injury with respect to the, not with a person, right, but with respect to the office holder. I've got a per diem. So, Your Honor, I believe that is a personal injury under— How is it a personal injury? It's because, you know, I have a per diem as a judge, I have to tell you. As a federal taxpayer, you should probably be upset about that, but we'll leave that to one side. But I don't get that because of my, you know, because I'm just a great person. It's because of my office. That's true, Your Honor, but that when you collect that per diem, assuming you do, it goes into your personal bank account and does not belong to your seat. An institutional injury is one that affects the powers of the institution. And the injury felt by the commissioners here is a personal one. They personally are able to keep the per diem. They personally benefit from the educational and experiential opportunities that they get by virtue of their seats. The logic that Your Honor, if I may, the logic Your Honor is suggesting would hold that any loss of employment is not challenging. No, no. When I have a job, it's my job. You can't fire me because of my race. You can't fire me because of my religion. But if I'm saying you can't eliminate this position, and if you eliminate this position, I don't get my per diem anymore. All of a sudden it sounds like your injuries are bound up in the job itself, the perquisites of the job. I'm just trying to get it. I understand what happened here. You amended the complaint because Stallworth said we're not going to consider this argument that you made the last time around because it wasn't platter at the time or it came up at oral argument. So you amended the complaint. That's what I would do too. You amended the complaint, and I'm trying to get at is the injuries that are now alleged in the amended complaint, does that solve the standing problem? That's the reason I'm asking. Yes, it does, Your Honor, because the injury that is being suffered does not depend on the injury felt by the individual plaintiffs in their personal capacity doesn't depend on the mechanism by which the state chooses to eliminate their positions. They're being stripped of their positions. Before the law goes into effect, they are serving as commissioners. Afterwards, they are no longer serving. The fact that that change injures them does not depend on Is the same injury with respect to all of the commissioners or only some of the commissioners? Each of the commissioners stands to be injured. In the same way? In the same way, but again, that does not If I may finish answering. You're welcome. Ask him. Judge, may I finish answering Judge Duncan's question? Yes. Thank you, Your Honor. Finish your thought. The fact that the injury affects all of the commissioners does not mean that it is not an institutional injury. Legislators rely on a misreading of raids to come to that conclusion. We cite a Tenth Circuit case, which Kerrigan has taken looper, which goes into this in some detail and clarifies that it is The analysis turns on whether the plaintiff has a personal stake in the dispute. And because the commissioners personally benefit from their positions, they have that requisite personal stake. Fair enough. Thank you, Your Honor. Thank you, sir. Thank you. Mr. Hawkins. May it please the court, I want to hit each of the three issues very quickly. Law of the case applies because both sides have briefed appellate jurisdiction and Stallworth and jurisdiction was accepted. I know there are exceptions occasionally to law of the case. I don't see why this court would make one in order to create a circuit split with the Eleventh Circuit. Because they accepted jurisdiction in exactly these circumstances. There's no good reason to back away from that. And if for some reason the court chooses to create a circuit split, then we think we ought to be entitled to ask for mandamus. We didn't ask for mandamus because we'd already won this argument once. And the most recent court to address it, who does agree that there isn't appellate jurisdiction, allowed mandamus. This court ought to do the same. If we get there, we don't think we will. On standing of the plaintiffs, he says the injury occurs at the time the board is abolished. If that's when it happens, who does he sue? Not a single defendant in this case has anything to do with the board being abolished. If that's in his theory, then we're back to Oak Peloby and a lot of the other cases this court wrestles with when somebody just wants an order that a statute is constitutional, but they can't find anybody who's got anything to do with enforcing it. But fortunately, that's not what his complaint says. His complaint says they will be injured not when the board is abolished, because it isn't abolished. They keep their jobs until a new board comes in, until a new commissioner comes in. They say they're injured when their replacement is appointed. That's what they asked to stop in the complaint. That's why they sued my people. And that hasn't happened yet. Not only has it not happened yet, they haven't alleged that when it happens, there will be any racial discrimination. That's where you get into Barber. And we've quoted Barber as the standard for standing in these cases. The people who sue, you choose to sue, have to be the people who injured you. And the remedy you get has to be a remedy that will prevent that injury. Well, they didn't have standing in Barber. They said this is a discriminatory law, and this court has said maybe so, but you haven't alleged anybody's going to use it to discriminate against you. That's exactly where we are in this complaint. So do you agree that they're alleging that their positions are being or will be eliminated on the basis of their own individual race as a commissioner? I don't read it that way. He read you one sentence where they said that the board will be eliminated on the basis of race, but that's after three pages of talking about racism directed toward the city government of Jackson, the city populace of Jackson. There isn't anything in the complaint that says the legislator would have acted because the commissioners are black. I also thought that we were having discovery directed to the legislators to talk about the passage of the law, and the legislators are obviously not going to eliminate these particular positions after. That's not what the law does. The law effectively, if you look at form, if you look at substance instead of form, Jackson still has an airport, it still has a board, and there will still be five Jackson members on that board. There will be additional members from other parts of the area, but there are five jobs for five people, so there's not necessarily going to ever be any injury to anybody. If you get to the point that somebody actually loses a job, and they want to say the appointing authority discriminated against me on the basis of race, then you may have a Turner v. Foosh case. But that's not what they've alleged, and we're not sure it's going to happen. They're not alleged that it's not clear that it is ever going to happen. So on the basis of Barber, unless you can allege that there will be somebody using this bill to discriminate against you, you haven't got standing. They certainly haven't alleged that, and I don't think they've really alleged that the statute was passed because of the race of the board. The statute was passed, according to them, because of the race of the Jackson politicians that appointed them. And we don't think that they have standing to complain about that. Courts already hold that Jackson politicians don't have standing. This is not something Congress intended to address in 1871. We ask the Court to either dismiss the complaint or to, if you do uphold the complaint, to quash our subpoenas. We thank the Court. Thank you, Mr. Horowitz. That concludes our oral argument for today. The Court will adjourn for the day. We'll re-adjourn. We'll adjourn until 1 o'clock tomorrow, but we have another case. We have to have a conference first and then between the judges, and then we have a death penalty case to be argued. I'll ask the panel, is five minutes adequate for us to call in for our telephone conference? Yes, Judge Dennis. Okay, then. The Court will adjourn until 1 o'clock.